# United States Court of Appeals

*for the*

# Eleventh Circuit

SULLIVAN'S ADMINISTRATIVE MANAGERS II, LLC,

*Plaintiff/Appellant,*

*v.*

GUARANTEE INSURANCE COMPANY,

*Defendant/Appellee.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
CASE NO: 4:12-cv-00212-LGW-GRS

(Hon. Lisa Godbey Wood)

## BRIEF OF APPELLEE

JOHN V. BURCH
WILLIAM R. BRYANT
BOVIS KYLE BURCH & MEDLIN, LLC
200 Ashford Center North
Suite 500
Atlanta, GA 30338
(770) 391-9100

MICHAEL R. MORRIS
MARY O. MORRIS
MORRIS & MORRIS, PA
777 S. Flagler Drive
Suite 800
West Palm Beach, FL 33401
(561) 858-9811

*Counsel for Defendant/Appellee*

Sullivan's Administrative Managers II, LLC v. Guarantee Insurance Company,
No. 16-17022

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, undersigned counsel of record for appellee certifies that the following is a full and complete list of all interested persons in this action:

Guarantee Insurance Company- Appellee

Sullivan's Administrative Managers, II, LLC- Appellant

The Honorable Lisa Godbey Wood - United States District Judge

Morris & Morris, P. A. – law firm representing Guarantee

Mary O. Morris, Esq- attorney for Guarantee

Michael R. Morris, Esq. – attorney for Guarantee

Bovis, Kyle, Burch & Medlin, LLC – law firm representing Guarantee

John V. Burch, Esq.- attorney for Guarantee

Gilbert, Harrell, Summerford & Martin, P. C.- law firm representing Sullivan's

Savage & Turner, P.C. *d/b/a* Savage, Turner, Pinckney & Savage – law firm representing Sullivan's

Wallace E. Harrell, Esq. – attorney for Sullivan's

Brent J. Savage, Esq – attorney for Sullivan's

Robert B. Turner, Esq. - attorney for Sullivan's

Respectfully submitted this 21st day of August, 2017 by counsel:

/s/ Michael R. Morris
Michael R. Morris, FBN 70254
Morris & Morris, P.A.
777 South Flagler Drive
Suite 800 - West Tower
West Palm Beach, Florida 33401
Tel. 561.838.9811; Fax. 561.828.9811
michael@morris.law

## Statement Regarding Oral Argument

This case is neither unique nor difficult. The applicable law is long-standing, well-established and repeatedly recognized by courts at both the state and federal levels, including this Court. There are no complex issues such that oral argument would aid their resolution and, as such, Guarantee respectfully suggests that oral argument in this case would not be an efficient use of judicial and other resources.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and
Corporate Disclosure Statement ................................................................ C-1

Statement Regarding Oral Argument ........................................................... i

Table of Authorities ................................................................................. iii

Statement of Subject Matter and Appellate Jurisdiction ........................... 1

Statement of the Issues .............................................................................. 1

Statement of the Case ............................................................................... 2

    I.    Course of Proceedings and Dispositions ..................................... 2

    II.   Statement of the Facts ............................................................... 3

    III.  Standard of Review ................................................................... 7

Summary of Argument .............................................................................. 8

Argument and Citations of Authority ......................................................... 9

    I.    Full Faith and Credit and Preclusion ........................................ 9

    II.   Sullivan's Arguments in the Florida case Prove that
         Res Judicata and/or Collateral Estoppel Apply ..................... 12

    III.  SAM II Cannot Meet its Burden to Show That Facts
         Remain to Show a Genuine Issue for Trial ............................. 14

Conclusion ............................................................................................... 17

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Albrecht v. State,*
  444 So.2d 8 (Fla. 1984) ...................................................................11

*Bradenton Group, Inc., v. State,*
  970 So.2d 403 (Fla. 5th DCA 2007) .............................................. 10

*Brown v. R.J. Reynolds Tobacco Co.,*
  611 F.3d 1324 (11th Cir. 2010) ....................................................... 9

*Celotex Corporation v. Catrett,*
  477 U.S. 317 (1986) ............................................................... 14, 16

*Florida Real Estate Commission v. Harris,*
  134 So.2d 785 (Fla. 1961) ...............................................................11

*Gerrard v. A.J. Gerrard & Co.,*
  2003 WL 25689968 (S.D. Ga. 2003) ............................................15

*Gomez-Ortega v. Dorten, Inc.,*
  670 So.2d 1107 (Fla. 3rd DCA 1996) ............................................11

*Gordon v. Gordon,*
  59 So.2d 40 (Fla. 1952) ................................................................. 10

*Hochstadt v. Orange Broadcast,*
  588 So.2d 51 (Fla. 3rd DCA 1991) ................................................11

*Israel Discount Bank, Limited v. Entin,*
  951 F.2d 311 (11th Cir. 1992) ......................................................... 7

*Jeffery v. Sarasota White Sox, Inc.,*
  64 F.3d 590 (11th Cir. 1995) ........................................................ 14

*Jordan v. Cobb County, Ga.,*
  227 F. Supp. 2d 1322 (N.D. Ga. 2001) ........................................15

*Kimbrell v. Paige,*
  448 So.2d 1009 (Fla. 1984) ........................................................ 10

*Leahy v. Batmasian*,
    960 So.2d 14 (Fla. 4th DCA 2007)............................................................... 9-10

*Matter of McWorter*,
    867 F.2d 1564 (11th Cir. 1989) ........................................................................ 7

*Mobil Oil Corp. v. Shevin*,
    354 So.2d 372 (Fla. 1977) .............................................................................. 10

*Precision Air Parts, Inc. v. Avco Corp.*,
    736 F.2d 1499 (11th Cir. 1984) ........................................................................ 7

*Progressive Express Insurance Company v. Reaume*,
    937 So.2d 1120 (Fla. 2nd DCA 2006)..............................................................16

*Richardson v. Alabama State Board of Education*,
    935 F.2d 1240 (11th Cir. 1991)........................................................................11

*Seaboard Coast Line Railroad Co. v. Indus. Contracting Co.*,
    260 So.2d 860 (Fla. 4th DCA 1972) ................................................................. 9

*Skyline Corp. v. N.L.R.B.*,
    613 F.2d 1328 (5th Cir. 1980)..........................................................................16

*Tyson v. Viacom, Inc.*,
    890 So.2d 1205 (Fla. 4th DCA 2005)....................................................... 11, 12

*United Auto Insurance Company v. Law Offices of Michael I. Libman*,
    46 So.3d 1101 (Fla. 3rd DCA 2010) ............................................................... 10

*Wausau Underwriters Insurance Company v. Careers USA, Inc.*,
    2012 WL 12540019 (S.D. Fla. 2012) ............................................................... 3

**Statutes & Other Authorities:**

28 U.S.C. § 1738 ..................................................................................... 8, 9

Fed R. Civ. P. 56(c).................................................................................. 7

Florida Statute § 627.291 ......................................................................8, 13

Florida Statute § 627.371 .................................................................. 6, 15, 16

Florida Statute § 627.403 ........................................................................ 6

# Statement of Subject Matter and Appellate Jurisdiction

Guarantee does not dispute the jurisdictional basis set forth by Sullivan's Administrative Manger's II [SAM II]. However, Guarantee clarifies an error. SAM II's brief says that it is appealing the 11 October 2016 order [DE 146] which it characterizes as a "final order." [SAM II's Brief, page 1]. As this Court noted in its order of 19 May 2017, DE 146 was not a final judgment. For the purposes of this brief, Guarantee assumes that SAM II is appealing DE 153, which was issued pursuant to this Court's order and which incorporates DE 146.

# Statement of the Issues

Whether the trial court erred in holding that SAM II's claims were barred by the doctrines of res judicata and collateral estoppel because the Florida proceedings featured:

a. the same parties;

b. the same causes of action; and

c. a judgment on the merits.

# Statement of the Case

This is an appeal from a final order granting a motion for summary judgment to Guarantee Insurance Company (Guarantee) on its counterclaim to SAM II's lawsuit brought in the United States District Court for the Southern District of Georgia (the Georgia district court case). In this brief, the name "Sullivan" is used to reference the various entities operating as professional employer organizations, many of which have been listed as additional insureds under the policies (along with hundreds of Sullivan's client companies). These insureds have enjoyed the tort immunity conferred under the worker's compensation system and under such coverage have complied with state laws imposing civil and criminal penalties for failure to obtain required worker's compensation insurance.

## I. Course of Proceedings and Dispositions

This case comes to this Court after proceedings in the trial and appellate courts of the State of Florida, and of the United States District Court. Sullivan, in its various guises, has lost in each of these venues over the past five years. Guarantee does not object to SAM II's recitation of the procedural history of the case, with two caveats.

First, this appeal is not an appeal of the Florida case, a state court matter over which this Court has no jurisdiction. Rather, it is an appeal of a finding that

SAM II's case in the Georgia District Court action is barred by the doctrines of res judicata and collateral estoppel. Whether Sullivan could have presented other evidence or handled the Florida action differently is not a question before this Court, as will be discussed below.

Second, SAM II recites as procedural history that Guarantee brought suit in Florida against a "nonexistent entity." [SAM II Brief, page 3]. To simply assert as fact, without explanation, in the procedural history is argumentative, misleading and inaccurate, as will be discussed below. In a similar vein, SAM II makes reference to its "apparently untimely" filing of a response to Guarantee's filing of the notice of mandate from the Florida Fourth District Court of Appeal. [SAM II Brief, page 5]. Judge Wood actually struck the pleading as untimely. [DE 146, page 7].

## II. Statement of the Facts

Sullivan obtained four policies of worker's compensation insurance through an independent broker, Arthur J. Gallagher RMS, Inc. (Gallagher) which, on Sullivan's behalf, submitted to Guarantee a standard application,[1] commonly

---

[1] All of the forms and policies in these cases are standard, state-approved documents. Workers' compensation insurance is a very regulated industry; carriers have to file with the State of Florida Office of Insurance Regulation (OIR) all manuals of classifications, rules, rates, rating plans and modifications. Carriers must use only approved forms, endorsements and policy documents. *See, e.g., Wausau Underwriters Insurance Company v. Careers USA, Inc.,* 2012 WL 12540019 (S.D. Fla. 2012).

referred to as an ACORD 130, for workers' compensation coverage listing the named insured as "Sullivan Administrative Managers I, LLC" [DE 34, pages 5-8]. That Sullivan Administrative Managers I, LLC was to be the first named insured is made explicit by an e-mail from a Gallagher employee to Guarantee, confirming the use of the Sullivan Administrative Managers name, but correcting that it should be an LLC, rather than the "Inc." that Guarantee had understood was to be used.

The first policy[2] was issued[3] with Sullivan Administrative Managers I, LLC listed as the first named insured with a policy period of 1 June 2008 to 1 June 2009 (GPEO176000001-108) [DE 7-1]. SAM II's brief incorrectly states that SAM I was a "non-existent entity." [SAM II Brief, page 3]. On all of the policies, SAM II and other Sullivan entities were listed as additional named insureds. [DE 07-1, page 6[4]]. Guarantee administered over 500 claims under these policies, advancing payments, costs and expenses within the deductible limits. At no time did a representative of

---

[2] SAM II makes reference to "the original 2007 agreement" between SAM II and Guarantee. [SAM II Brief, page 6]. In support of its contention, SAM II cites to two docket entries, without stating that both are depositions of Walter Petzold, the vice president of Gallagher. There is no 2007 policy at issue in this case, and SAM II does not clearly identify to what it is referring. For purposes of this brief, Guarantee assumes that SAM II is referencing the negotiations for the 2008 policy.

[3] Guarantee concedes neither that the policies were never sent to Sullivan or Gallagher, nor that such delivery is necessary or relevant to this appeal.

[4] Specifically, Sullivan Group Financial, LLC; Sullivan Administrative Managers II, LLC; and Sullivan Staffing, Inc.'s various offices are all listed as additional insureds throughout the policy.

any Sullivan entity attempt to disclaim the benefits being received or correct the named insured to SAM II or one of the other Sullivan entities. SAM II acknowledges in footnote 2 of page 6 of its Brief that SAM II, rather than SAM I, should have been the named insured and that it was an error by Gallagher that led to the incorrect name being used.

During the duration of the policies, Martin Sullivan signed multiple documents as a representative of "Sullivan Administrative Manager's I, LLC." [DE 111-22, pages 2-26]. During the course of the policies, "Sullivan Administrative Managers, Inc" was sent premium notices, some of which it paid. [DE 61-2]. Sullivan defended the Florida case and filed pleadings under the name of Sullivan Administrative Managers I, LLC in multiple court filings. [DE 111-10] and admitted that SAM I had been issued some of the worker's compensation policies listed above.

In the Georgia case, SAM II specifically included in its Factual Background section statements that all of the above-listed worker's compensation insurance policies were issued to SAM II. [DE 1-1, pages 3-4]. Sullivan here makes a critical mistake; confusing a master policy (such as these) with a multiple coordinated policy where each client has to have a separate policy.

The first policy was subsequently renewed in the name of Sullivan Administrative Managers I, LLC for the 2009-2010 policy term (GPEO176000001-109) [DE 7-2]; for the 2010-2011 policy term (GPEO176000001-110) [DE 7-3]; and the 2011-2012 policy term (GPEO176000001-111) [DE 7-4]. These policies were loss-sensitive policies pursuant to which the insured shares in the risk of losses up to the designated deductible. In exchange for assuming a portion of risk, the cost of the policy is significantly decreased. Premium for the policies includes loss development, fees, or any other charge in consideration for the insurance contract.[5]

Guarantee computed premiums based on Sullivan's loss history and Guarantee's manuals, filed rates and plans, as stated in the Policy Part Five-Premium.[6] Guarantee's rating plans were filed with the appropriate entities in Florida and Georgia. Sullivan refused to pay the invoices. Sullivan also failed to avail itself of the required administrative remedies under Florida Statute §627.371, despite the claims of evidence to the contrary made by SAM II.[7] In the absence of payment or notice that Sullivan would be contesting the invoice in the proper

---

[5] Florida Statute §627.403.

[6] "A. Our Manuals- All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance." [DE 7-1, page 491].

[7] What SAM II characterizes as evidence "of extreme importance" will be dealt with below, in the argument section.

administrative forum, Guarantee filed suit in Florida, thus beginning the chain of events detailed in the procedural history above.

## III. Standard of Review

Guarantee agrees that a *de novo* standard of review is applicable in reviewing grants of summary judgment, although SAM II misquotes Fed. R. Civ. Pro. 56(c)[8] in setting forth its standard for summary judgment. Summary judgment in this case was granted on the basis of res judicata and/or collateral estoppel. [DE 146] Sullivan identifies no standard of review for either doctrine. Barring a claim on the basis of res judicata is a determination of law, and the standard of review is *de novo. Israel Discount Bank, Limited v. Entin,* 951 F.2d 311, 314 (11th Cir. 1992). Likewise, the question of whether collateral estoppel was properly applied is a legal question that the Court considers *de novo. Matter of McWorter,* 867 F.2d 1564, 1566 (11th Cir. 1989). However, in reviewing a trial court's determination of what was actually litigated in the previous case, the clearly erroneous standard is used. *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1502 (11th Cir. 1984).

---

[8] Sullivan quotes Fed R. Civ. P. 56(c) as reading that summary judgement is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." [SAM II Brief, page 12]. This language may come from a case, but is not included in the Rule.

# Summary of Argument

I. The lower court was required to give preclusive effect to the Florida state court judgment and the Florida appellate courts affirmance, under the Full Faith and Credit Act, USC §1738, and Florida's law on preclusion. The doctrines of res judicata and/or collateral estoppel thus barred SAM II's claims because the Florida court had already decided a case with identical parties and the same causes of action (including those that could have been raised in the prior action).

II. SAM II in fact made arguments about the application of Georgia law on *lex loci contractus* and against the application of Florida Statute §627.291 in the Florida action and so cannot argue that it was prevented from actually litigating these issues.

III. SAM II cannot meet its burden to show that there are any genuine issues of material fact remaining to be decided at trial. SAM II is required to designate by affidavits, depositions or admissions specific facts showing that there are material facts. Mere pleadings are not enough to meet this burden.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. FULL FAITH AND CREDIT AND PRECLUSION

The Georgia District Court was bound by the Full Faith and Credit Act, 28 U.S.C. §1738, to give preclusive effect to the final Florida state court judgment, just as would have been the state courts of Florida. See, *Brown v. R.J. Reynolds Tobacco Co.,* 611 F.3d 1324, 1331 (11th Cir. 2010). In Florida, the effect of res judicata constitutes an absolute bar to a subsequent action. *Seaboard Coast Line Railroad Co. v. Indus. Contracting Co.,* 260 So.2d 860, 862 (Fla. 4th DCA 1972). Absolute bar means just that- if the requirements are met for res judicata or collateral estoppel, the party against whom judgment was rendered does not get to readdress prior matters by filing another suit. Had Sullivan attempted, during the course of the Florida action, to file suit against Guarantee in another court in the state, the judgment of the Broward court would clearly be preclusive. Under the Full Faith and Credit Act, the same is true regarding the Georgia district court.

For doctrine of res judicata to apply in Florida there must be four identities: the thing sued for; the cause of action; the persons and parties to the actions; and quality or capacity of the person for or against whom the claim is made.[9] *Leahy v.*

---

[9] SAM II does not raise as an issue for any of these identities other than cause of action.

*Batmasian,* 960 So.2d 14 (Fla. 4th DCA 2007). If these exist, a party is precluded from again bringing suit, even if it now wishes to make arguments which it might have originally made. *Kimbrell v. Paige,* 448 So.2d 1009, 1012 (Fla. 1984).

Res judicata and collateral estoppel are closely related, as Florida courts have recognized for many years. *See, e.g., Gordon v. Gordon,* 59 So.2d 40, 34 (Fla. 1952). As with res judicata, the function of collateral estoppel is to prevent parties from relitigating issues that have previously been decided by other courts. Collateral estoppel requires that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction. *Mobil Oil Corp. v. Shevin,* 354 So. 2d 372, 374 (Fla. 1977). For purposes of collateral estoppel, the matter in question need not be expressly adjudicated, but must be essential to the rendition of the judgment. *United Auto Insurance Company v. Law Offices of Michael I. Libman,* 46 So.3d 1101, 1104 (Fla. 3rd DCA 2010). Furthermore, even if the causes of action are different and thus bar the application of res judicata, collateral estoppel bars the relitigation of issues. *Bradenton Group, Inc., v. State,* 970 So.2d 403, 409 (Fla. 5th DCA 2007). For the purposes of this appeal, the relevant issue is essentially the same for both doctrines- whether Sullivan is precluded from relitigating points in the Georgia District Court case that it already litigated in the Florida case.

SAM II attempts to turn the concepts of res judicata and collateral estoppel on their heads by arguing that, since the Florida court ruled against it, it was prevented from actually litigating all of the relevant issues and res judicata and collateral estoppel therefore do not apply. Florida law does not require all possible defenses to have been brought in order for a judgment to be conclusive. *Florida Real Estate Commission v. Harris*, 134 So.2d 785, 788 (Fla. 1961). In support of its position, SAM II cites *Hochstadt v. Orange Broadcast,*[10] a case on collateral estoppel that contains no explanation or discussion of what the term "actually litigated" means. In exploring the principle of res judicata, courts have repeatedly held that a final judgment by a court of competent jurisdiction is absolute and puts to rest every matter actually or potentially litigated. *Richardson v. Alabama State Board of Education,* 935 F.2d 1240, 1244 (11th Cir. 1991); *Gomez-Ortega v. Dorten, Inc.,* 670 So. 2d 1107, 1108 (Fla. 3rd DCA 1996).

Mere pleading does not prove or disprove identity of the cause of action. Rather, identity of the cause of action is shown by examination of whether the facts or evidence necessary to maintain the suit are the same in both actions. *Tyson v. Viacom, Inc.,* 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005), citing *Albrecht v. State,* 444 So.2d 8, 12 (Fla. 1984), *superseded by statute on other grounds.* In

---

[10] 588 So.2d 51, 52-53 (Fla. 3rd DCA 1991).

conducting this examination, the court looks not only at the actual causes of action,

but also at "every other matter which the parties might have litigated and had

determined, within the issues as [framed] by the pleadings or as incident to or

essentially connected with the subject matter of the first litigation." *Tyson,* 890

So.2d at 1214.

## II. Sullivan's Arguments in the Florida case Prove that Res Judicata and/or Collateral Estoppel Apply

There is a difference between being prevented from making an argument and

making the argument and losing it. SAM II complains of the effect of the Florida

administrative exhaustion doctrine and that the Georgia court erred in finding that

Florida law applied. SAM II is not, as explained above, entitled to a second

appellate bite at the apple in arguing that the Florida court made mistakes.

Examination of the record shows that SAM I[11] made arguments in Florida and lost.

SAM II then made the same arguments in Georgia and res judicata and/or

collateral estoppel were appropriately applied. A simple comparison of the

arguments made by Sullivan is useful:

---

[11] SAM II has specifically acknowledged that the policies were negotiated for it by Gallagher and that it received coverage and renewed that coverage. Guarantee uses SAM I and SAM II in this section for clarity, but again points out that SAM II has effectively acknowledged in its brief identity of the parties. *See, e.g.,* SAM II Brief, pages 5-6, 11, 37.

| Issue | Florida case[12] | Georgia Case[13] |
|---|---|---|
| Lex loci contractus | 3 | 3 |
| No evidence of policy delivery to Sullivan | 3 | |
| Florida law does not apply | 3 | 3 |
| F.S. §627.291 should not prevent Sullivan from defending | 4 | 3 |

It is notable that SAM II's brief refers very specifically to its assertion that Florida and Georgia courts erred in applying Florida law. This not only shows that Sullivan made the same argument in both courts, but that its real complaint is not that the Georgia district court incorrectly applied the res judicata and/or collateral estoppel doctrines but that it lost in the Florida court. If there were error on the part of the Georgia District Court, it was in rendering any opinion on whether Florida or Georgia law applied, once it was clear that Sullivan was making the same argument in two successive courts.

---

[12] Numbers in this column are page numbers from Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment [DE 111-13].
[13] Numbers in this column are page numbers from Plaintiff's Response to Defendant's Motion for Summary Judgment based on Res Judicata and Collateral estoppel [DE 117].

## III. SAM II Cannot Meet its Burden to Show That Facts Remain to Show a Genuine Issue for Trial

Once a moving party shows that there are no genuine issues of material fact remaining for trial, the responding party has a burden to "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file" designate specific facts showing that there is a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir. 1995), citing *Celotex Corporation v. Catrett,* 477 U.S. 317, 324 (1986).

SAM II, as shown above, cannot demonstrate that it was unable to make arguments in the Florida court regarding such matters as delivery of the policies. Having lost, it appealed and lost again. Simply put, it does not matter if the Florida courts erred in granting Guarantee's motion for summary judgment. The Florida judgment precludes the Georgia District Court from rehearing the case.

In the absence of the ability to show any relevant facts (as opposed to pleadings) SAM II resorts to inadmissible evidence to try and suggest that there are reasons not to have granted summary judgment. Specifically, it says that it presented evidence that it had sought out administrative remedies in the Florida action:

> [o]f extreme importance is that SAM I (really SAM II) attempted to invoke the administrative process in Florida but was told that it could not contest Guarantee's overbilling because litigation had

> already begun, and was also told that Georgia was the proper state
> in which to seek administrative relief. (Dkt. Nos. 116-1, 117).

[SAM II Brief, page 11].

Neither docket entry proves these statements let alone establishes that there are still relevant facts remaining that preclude summary judgment. DE 116-1 is an affidavit from Robert Jones, an employee of Sullivan who uses a @savannahpeo.com e-mail address, which purports to relate a conversation he had with Mike Donohoe of the Florida Department of Financial Services saying that the file had been closed on Sullivan's insurance issues.[14] Taken at face value, the conversation occurred 22 January 2014 – almost two years after Guarantee had filed its complaint in the Florida action. The attached exhibit, DE 116-2, does not specify what "insurance" issues the Department had addressed. No mention is made in the exhibit of the administrative process or the role litigation plays in §627.371, nor is the State of Georgia mentioned. The affidavit lacks any mention, let alone proof, that Sullivan made the written request required by §627.371. Likewise, it does not explain how a conversation with someone whose letterhead states "Department of Financial Services Division of Consumer Services" meets

---

[14] As this affidavit and its attachment contain inadmissible hearsay, Guarantee filed a notice of objection to the testimony. *Gerrard v. A.J. Gerrard & Co.*, 2003 WL 25689968, n.10 (S.D. Ga. 2003). *See also, e.g., Jordan v. Cobb County, Ga.*, 227 F.Supp.2d 1322, 1346 (N.D. Ga. 2001) (*accord*). Guarantee continues to object to this testimony as containing multiple levels of hearsay.

the §627.371 requirement that an insurer seek relief with the Office of Insurance Regulation (OIR). *See,* e.g. *Progressive Express Insurance Company v. Reaume*, 937 So.2d 1120 (Fla. 2nd DCA 2006). Finally, there is no evidence in the record either that Sullivan sought to file this affidavit in the Florida action before the verdict was entered, or that it could not have done so.

SAM II otherwise cites to DE 117 to support its contention that it was denied access to the administrative process. This document is its response to Guarantee's motion for summary judgement. It contains no attachments, affidavits, quotes from an affidavit or anything besides argument. SAM II is free to cite to whatever it wants, so long as it is in the record, but DE 117 is a response brief and not evidence and as such cannot be used to show that a genuine issue of fact remains for trial. *See, Celotex Corporation v. Catrett, supra,* at 324; *Skyline Corp. v. N.L.R.B.,* 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statement by counsel in briefs are not evidence.").

## Conclusion

SAM II appeals from the decision of the Georgia District Court, arguing that both it and the Florida courts misinterpreted the law regarding administrative preclusion and *lex loci contractus* and that these misinterpretations denied it the right to assert a full range of defenses and counterclaims. In arguing that both courts made similar errors, SAM II reveals the fatal error of its appeal. It made these arguments in a Florida state court but lost. It appealed that decision to the relevant Florida appellate court and lost again. Under the doctrines of res judicata and/or collateral estoppel, the issue before the Georgia District Court was not whether Georgia or Florida law applied in the context of *lex loci contractus,* but simply whether SAM II had made them in another court from which judgment issued. Sullivan's own pleadings show that it did make these arguments and that it was precluded from doing so again in the Georgia District Court.

For the policy considerations attending the doctrines of res judicata and collateral estoppel and on the authorities and argument presented, Guarantee respectfully requests that this Court affirm the decision of the Georgia District Court.

Respectfully submitted this 21st day of August, 2017 by counsel:

/s/ Michael R. Morris
Michael R. Morris, FBN 70254
Morris & Morris, P.A.
777 South Flagler Drive
Suite 800 - West Tower
West Palm Beach, Florida 33401
Tel. 561.838.9811; Fax. 561.828.9811
michael@morris.law

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 3,750 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Equity Text A font.

<u>/s/ Michael R. Morris</u>

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2017, 7 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the brief was served on the following by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing:

Brent J. Savage
Savage Turner Pinckney, PC
102 E Liberty St., 8th Fl.
PO Box 10600
Savannah, GA 31412
912-231-1140

*/s/ Catherine B. Simpson*
Counsel Press
1011 East Main Street
Richmond, VA 23219
(804) 648-3664

Filing and service were performed by direction of counsel